**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-CV-01846-DDD-CYC

STEPHAN LONG

Plaintiff,

v.

DANIEL MEADOWS, INDIVIDUALLY
ADAM LUCERO, INDIVIDUALLY; AND
CITY AND COUNTY OF DENVER, COLORADO, A MUNICIPALITY

Defendants.

---

**DEFENDANT LUCERO AND CITY OF DENVER'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(B)(6)**

---

Defendants, ADAM LUCERO and CITY AND COUNTY OF DENVER, COLORADO (the "City"), move to dismiss the Complaint against them:

## CONFERRAL

The undersigned conferred with opposing counsel, who opposes this Motion.

## INTRODUCTION

Plaintiff asserts Five Claims for Relief in his Civil Rights Complaint and Jury Demand ("Complaint"). All five of Plaintiff's asserted Claims for Relief against Defendant Lucero are based on the misplaced argument that a dismissal of charges vitiates otherwise valid probable cause to arrest him. Plaintiff's selective prosecution claims, the First and Second Claims for Relief, are based on a single dissimilar case and vague statistics he alleges show difference in treatment between white and black criminal defendants in Denver generally. Plaintiff's claims for relief against Defendant Denver, the First, Third, and Fifth Claims for relief, are based entirely on a

theory of *Monell* Liability, but without a valid claim against the individual defendants, these claims must fail. As none of these claims are supported by facts which plausibly state a claim against these Defendants, Plaintiff's claims must be dismissed pursuant to F.R.C.P. 12(b)(6).

**FACTUAL BACKGROUND**

This case stems from Mr. Long's shooting of two individuals on the side of a busy interstate in Denver, Colorado. For purposes of this Motion only, the facts of the case are not in dispute. Mr. Long pulled off the interstate, followed by individuals in another vehicle. Complaint, ¶¶ 27-28. The second vehicle pulled in front of Mr. Long and stopped quickly, and a passenger exited the vehicle confronting Mr. Long. Id., ¶¶ 28-34. The passenger began hitting Mr. Long, who was still in his car, with a closed fist. Id., ¶¶ 36-38. Mr. Long, fearing for his life, shot the passenger with his pistol, killing him. Id., ¶¶ 40-42, & 55. As this occurred, the driver of the second vehicle approached Mr. Long. Id., ¶ 43. The driver began hitting Mr. Long, at which point Mr. Long began to drive away. Id., ¶¶ 45-48. Mr. Long shot the driver as the driver clung to the side of Mr. Long's vehicle, killing him a few blocks from where the passenger was shot. Id., ¶¶ 51 & 55. Mr. Long then left the scene. Id., ¶ 57. He did not call 911. Id. ¶ 56.

Mr. Long freely admitted he shot and killed both victims. In an interview with Defendant Lucero, he claimed to have done so in self-defense. Complaint 1, ¶ 70-71. At that time, Mr. Long had no visible injuries. Exhibit A, Statement of Probable Cause (PC Statement).[1] Mr. Long had just fled the scene of two shootings and did not call 911 or contact police before being stopped by

[1] The Complaint expressly references the probable cause statement. Complaint, ¶¶ 74 & 79. This Court may consider documents references in the Complaint which are central to Plaintiff's Claims. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

Denver Police Department officers. *Id.*; Complaint 1, ¶ 57. Mr. Long was arrested and charged with two counts of homicide. PC Statement, p. 1.

Mr. Long alleges Defendant Meadows failed to read him his *Miranda* rights. Complaint, ¶ 61. Mr. Long admits Defendant Lucero advised him of his *Miranda* rights and answered questions about those rights before Long waived those rights. Complaint, ¶¶ 64-68. The District Attorney's Office later dismissed all charges against Mr. Long. Complaint, ¶¶ 89 & 95.

**STANDARD OF REVIEW**

Pursuant to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), courts must "look to the specific allegations in the Complaint to determine whether they plausibly support a legal claim for relief." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (internal citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). Plaintiff's legal conclusions couched as factual allegations need not be considered. *Iqbal*, 556 U.S. at 678–79. Plaintiff bears the burden to allege sufficient factual allegations indicating he or she is entitled to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). In the context of municipal liability under 42 U.S.C. § 1983, "at the pleading stage, the existence of a *Monell* policy is a conclusion to be built up to, rather than a fact to be baldly asserted." *Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1206 (D. Colo. 2020) (cleaned up).

## LEGAL ARGUMENT

### I. Plaintiff's malicious prosecution and unlawful arrest claim against Defendant Lucero fail because the determination of probable cause is not undermined by the assertion of self-defense [First, Second, Third, and Fourth Claims for Relief].

An arrest is lawful if an officer has probable cause to arrest for any offense. *Mglej v. Gardner*, 974 F.3d 1151, 1161 (10th Cir. 2020). Thus, an unlawful arrest claim fails when there was probable cause to make the underlying arrest. *E.g. Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). Even if an officer was mistaken that probable cause existed to make an arrest, the arrest is lawful if the officer's probable cause determination was objectively reasonable. *Id.* A malicious prosecution claim also fails in the presence of probable cause. *E.g. Thompson v. Clark*, 142 S. Ct. 1332, 1337–38 (2022); *Schnelle v. Cantafio*, 224 COA 17 at *P8 (Colo. Ct. App. 2024).

Probable cause exists where there is a substantial probability that the suspect committed the crime. *Kapinski v. City of Albuquerque*, 964 F. 3d 900, 907 (10th Cir. 2000). That a suspect is later not found guilty is irrelevant to the inquiry. *Id*. Even if a reasonable jury could find that an individual acted in self-defense in shooting another person, there may be probable cause to arrest. *Id*. Probable cause is a permissible standard. *Id*. at 908.

*Kapinski* is on point with respect to the case at bar. Kapinski was assaulted by several individuals. *Id*. at 903. Kapinski fell into his vehicle where the assault continued. *Id*. Kapinski shot his assailants. *Id*. The arresting officer completed a probable cause statement which included some information consistent with Kapinski acting in self-defense. *Id*. at 904. Kapinski was acquitted. *Id*. Kapinski alleged the arresting officer did not provide sufficient information with respect to his self-defense claims in the probable cause statement. *Id*. The court, noting that the warrant could have been clearer with respect to the self-defense claim, nevertheless upheld the arrest. *Id*. at 912.

The same is true in this case. Although some information was not included in the PC Statement, much information was included consistent with Plaintiff's claim of self-defense. Both the PC Statement and the Complaint include that Plaintiff was confronted by a person driving next to Plaintiff and yelling at him. PC Statement, p. 1; Complaint, ¶23. Each describes Plaintiff getting cut off. PC Statement, p. 1; Complaint, ¶28. The PC Statement describes Plaintiff getting assaulted by the passenger of the vehicle, and so does the Complaint. PC Statement, p. 1; Complaint, ¶¶ 34-36. Both documents describe the unprovoked assault upon Plaintiff by the driver of the vehicle. PC Statement, p. 1; Complaint, ¶ 45. And both describe the driver holding on to Plaintiff's car door while Plaintiff drove away. PC Statement, p. 1; Complaint, ¶ 49-50.

An officer is not required to credit all possible exculpatory evidence in making an arrest decision. *Moses-El v. City & Cnty. of Denver*, 2022 WL 1741944 at *10 (10th Cir. 2022). In particular, the officers had no duty to credit Mr. Long's self-defense claims. *Sanchez v. Labate*, 564 Fed. Appx. 371, 374 (10th Cir. 2014). The probable cause statement allows the inference of a self-defense claim because it includes Mr. Long's claim that he was attacked before the shooting.

Adding details supporting self-defense does not alter the conclusion that probable cause existed here. *Kapinski*, 964 F.3d at 905 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). Under *Franks*, a plaintiff must show that an officer knowingly or with reckless disregard for the truth omitted material facts from a warrant. *Id*. When items omitted are substantially the same as that included, that information is not material. *Id*. at 907-08. Where an officer includes some information which supports the plaintiff's position, even though not all, requires a finding that the officer did not act knowingly or with reckless disregard for the truth. *Id*. at 908. As noted above,

because the information in the PC Statement is nearly identical to what Mr. Long claims should have been included, adding more does not undermine the probable cause determination.

Even if this Court agrees that an express self-defense claim should have been included in the PC Statement, probable cause exists when a suspect admits to killing a person even though the suspect claims to have acted in self-defense. *Sanchez v. Labate*, 564 Fed. Appx. 371, 373 (10th Cir. 2014). *Sanchez* interpreted New Mexico's self-defense law and held that the burden on the state to prove a killing was unlawful when a suspect raises self-defense arises at trial and not before. *Id*. at 374. As a result, the *Sanchez* Court also held that officers had no duty to consider a self-defense claim when determining probable cause to arrest. *Id*. And, as in New Mexico, in Colorado the issue of self-defense is an affirmative defense which the prosecution must address and defeat at trial. *People v. Pickering*, 276 P.3d 553, 555-56 (Colo. 2011).

Here, the Complaint repeatedly alleges no probable cause supported the Plaintiff's original prosecution. But Mr. Long ignores his own admissions in the Complaint which demonstrate probable cause. As in both *Kapinski* and *Sanchez*, Mr. Long admits to shooting two unarmed individuals resulting in their deaths. Complaint, ¶¶ 2, 4, 5, 32, 42, 45, 51, 55. Mr. Long admits he then fled the scene and did not call 911. Complaint, ¶¶ 56-57. Mr. Long asserts he committed these acts in self-defense. Complaint 1, ¶¶ 2, 4, 6, 53, 54, 70-72, 75, 78, 84, 86, 88, 91, 98, 100, 109, 112, 113, 114, 178. Mr. Long was charged with First Degree Murder. Complaint 1, ¶¶ 73-74. In Colorado, Murder in the First Degree occurs when, with deliberation and intent to cause the death of a person a suspect causes death. Colo. Rev. Stat. § 18-3-102(a). It is without question that Mr. Long deliberated and then intentionally shot two individuals, resulting in their deaths. Therefore, probable cause exists as a matter of law.

Unless "conclusively" established, an affirmative defense to a crime does not negate probable cause. *Sanchez* 564 Fed.Appx. at 373-4. The information Mr. Long asserts should have been included in the probable cause statement does not conclusively establish self-defense. The fact that both victims were unarmed while Mr. Long had a gun, the victims were shot in two separate locations, Mr. Long appeared to be uninjured, did not call 911, and he fled the scene all belie a self-defense claim.

Finally, with respect to Mr. Long's malicious prosecution claims, the decision on whether to charge an individual with a crime rests solely with the prosecutor. *U.S. v. Anderson*, 940 F.3d 593, 597 (10th Cir. 1991). Convincing evidence is required to show otherwise. *Id*. Only where an individual officer withholds exculpatory information or deliberately misleads a prosecutor can that officer be liable for the prosecutor's continuing the case. *E.g. Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10th Cir. 2004). Further, the withheld information must cause the continued prosecution. *Id*. Nothing in the Complaint alleges any individual defendant somehow withheld any information, whether inculpatory or exculpatory, from any prosecutor. As in *Kapinski*, the probable cause statement here includes information allowing an inference of a self-defense claim. Neither does the Complaint allege that any officer mislead any prosecutor as to any facts related to Mr. Long's shooting. With no allegation that any Defendant either withheld information or misled a prosecutor, the Complaint cannot state a plausible malicious prosecution claim.

With respect to Plaintiff's state law claims, for the purposes of an unlawful seizure, the Colorado and United States Constitutions give the same results. *E.g. Eddie's Leaf Spring Shop & Towing LLC v. Colo. PUC*, 218 P.3d 326, 334 (Colo. 2009). Thus, Mr. Long's claims against the

individual defendants pursuant to Colo. Rev. Stat. § 13-21-131 fail for the same reasons as his federal law claims and must be dismissed.

## II. Plaintiff lacks sufficient allegations supporting his selective prosecution claims [First and Second Claims for Relief] and due process claims [Fifth Claim for Relief].

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *U.S. v. Armstrong*, 517 U.S. 456, 463 (1996). The standard for demonstrating a selective prosecution claim is demanding. *Id*. at 463-64.

While statistics may occasionally be used to demonstrate a custom of constitutional violations, Mr. Long's cited statistics do not clear the bar to permit such an inference here. Mr. Long provides general crime statistics (with no citations to permit any verification) about the relative percentages of the City's population who identify as Black versus white, differences in rates of referral to the District Attorney's Office between cases involving Black and white defendants, differences in time to resolve cases, and other statistics. Complaint, ¶¶ 102-108. Missing from these statistics is any reference to the specific crimes any individual defendant or group of defendants is alleged to have committed. But statistics, to support this claim, must "… identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted." *Armstrong*, 517 U.S. at 470. Thus, the Complaint fails to state any claim related to selective prosecution.

Mr. Long also asserts he was prosecuted due to arbitrary conduct which shocks the conscience because he was subjected to coercive investigative techniques and prosecuted because he is Black. Complaint 1, ¶¶ 183-184. The only allegedly coercive investigative technique Mr. Long alleges is a lack of a *Miranda* warning by Defendant Meadows. Complaint 1, ¶ 61. A waiver

of Miranda rights may be either express or implied, but is only contradicted by an invocation of Miranda rights. *Berghuis v. Thompkins*, 560 U.S. 370, 387-88 (2010). With respect to Defendant Lucero, Mr. Long makes no allegation that he did not understand or voluntarily waive his *Miranda* rights. He does not allege that he invoked his *Miranda* rights. Even if Officer Meadows failed to provide Mr. Long with a Miranda warning, this does not violate Mr. Long's constitutional rights. *U.S. v. Patane*, 542 U.S. 630, 631 (2004) ("[T]he police do not violate a suspect's constitutional rights [] by negligent or even deliberate failures to provide full *Miranda* warnings."). Mr. Long has made no plausible allegation of any abusive or coercive investigatory practice. Mr. Long's allegations that he was denied due process because he is Black fail for the same reasons they fail as to Mr. Long's other race-related claims. Thus, Mr. Long's selective prosecution and due process claims must be dismissed.

## III. Plaintiff's Complaint lacks sufficient allegations to state any claim against the City [First, Third, and Fifth Claims for Relief].

As a threshold matter, to plead a *Monell* claim against the City, Plaintiff must first demonstrate a constitutional violation by municipal employee. *Crowson v. Washington Cty.*, 983 F.3d 1116, 1191 (10th Cir. 2020). For the reasons stated above, Mr. Long fails to state a claim against the individual defendants and thus fails to state a claim against the City. Should this Court does not dismiss the individual defendants, Mr. Long still fails to state a claim against the City.

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

The official policy requirement was intended to distinguish acts of the city from acts of its employees, and to make clear that municipal liability is limited to action for which the city is responsible. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986). Thus, to state a claim under 42 U.S.C. § 1983 against a municipality, a plaintiff must sufficiently allege that a municipal employee violated the plaintiff's constitutional rights and that a municipal policy was the "moving force" behind the violation. *See Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). Under 42 U.S.C § 1983, a plaintiff must plead three elements to establish municipality liability: "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 770 (10th Cir. 2013). And, a plaintiff must demonstrate that the municipality was deliberately indifferent to the known or obvious consequences of its actions. *Arnold v. City of Olathe*, 35 F.4th 778, 795-96 (10th Cir. 2022).

As a threshold issue, it is not entirely clear which theories of *Monell* Plaintiffs are attempting to pursue. The Complaint seems to offer three interwoven theories: an unconstitutional policy of the City, a failure to train/supervise/discipline, and a custom of the City. Complaint 1, ¶¶ 127-29, 160-62, 186-88. The City will take each in turn.

**A. Plaintiff lacks sufficient allegations of any unconstitutional policy of the City.**

To show that a municipal policy was the "moving force" behind a constitutional violation, the plaintiff must specifically identify the municipal policy under which an employee acted. *See Arnold v. Olathe*, 35 F.4th 778, 795 (10th Cir. 2022); *Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022); *Hinkle v. Beckham Cnty. Bd.*, 962 F.3d 1204, 1239 (10th Cir. 2020). A municipal policy may exist in one of five ways:

> *(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that ... is so permanent and well settled as to constitute a custom or*

> *usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.*

*Crittenden v. City of Tahlequah*, 786 F. App'x 795, 800 (10th Cir. 2019) (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). If the municipal policy is facially unconstitutional, no further showing is necessary to state a claim against the municipality. *Finch*, 38 F.4th at 1244; *Hinkle*, 962 F.3d at 1240. But if the municipal policy is facially constitutional, the plaintiff must sufficiently allege that "the municipality was deliberately indifferent to constitutional violations that were the obvious consequence of its policy" and that "the policy directly caused" the alleged constitutional violation. *Finch*, 38 F.4th at 1244; *see also Hinkle*, 962 F.3d at 1240-41. A municipality is deliberately indifferent if it "has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

Similarly, to establish a municipal liability under a ratification theory, a Complaint must identify a final policymaker who allegedly ratified the conduct giving rise to a plaintiff's claim, *Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1207 (D. Colo. 2020) and the final policymaker must "approve [an officer's] decision, … adopt the basis for the decision, and the ratification must be the moving force, or cause, of the alleged constitutional violation." *Dempsey v. City of Baldwin*, 143 Fed. Appx. 976, 986 (10th Cir. 2005) (unpublished).

The Complaint fails to specifically identify the municipal custom, policy, or final policy maker under which the individual defendants allegedly acted. While the Complaint asserts the

conclusory statements that states Denver had an informal custom amounting to a widespread practice under which Defendants acted. The Complaint lacks sufficient allegations showing Denver had any such policy or custom. It also fails to provide any allegations showing deliberate indifference and causation. Thus, the Complaint fails to state a claim against Denver.

**B. Plaintiff lacks sufficient allegations of any failure to train, supervise, or discipline by the City.**

The Complaint also fails to allege a failure to train, supervise, or discipline theory. To establish a municipal policy under the failure to train theory, a plaintiff must prove (1) the training provided was inadequate, (2) the inadequate training demonstrates deliberate indifference on the part of the city, and (3) a direct causal link between the constitutional deprivation and the inadequate training. *See Trujillo v. Campbell*, No. 09-cv-03011-CMA-KLM, 2012 WL 3609747 at *6 (D. Colo. Aug. 22, 2012). To meet this standard, "a plaintiff must identify a specific deficiency that was obvious and closely related to his injury." *Porro v. Barnes,* 624 F.3d 1322, 1328 (10th Cir. 2010) (internal citations omitted). The failure to discipline is not tantamount to ratification. *See Erickson*, 489 F. Supp. 3d at 1207.

In any case, any failure to train, supervise, or discipline, must have occurred prior to the incident at bar in order for it to be a causal factor in the incident. See *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("… basic principals of linear time prevent us from seeing how conduct that occurs after the alleged violation could have somehow caused that violation.").

The Complaint fails to identify any deficiency in Denver's training, supervision, or discipline. Complaint 1, ¶ 128, 161, 188. Instead, it baldly alleges, "Denver's deficient training, supervision, and discipline caused the violation of Plaintiff's constitutional rights" without providing any supporting factual details. *Id.* This allegation is conclusory, must be disregarded,

and fails to satisfy Plaintiff's pleading burden. The Complaint also fails to show deliberate indifference and causation. Nothing shows Denver had actual or constructive notice, any training, supervision, or disciplinary deficiency was substantially certain to result in a constitutional violation. Additionally, the Complaint lacks any allegations directly or indirectly showing any deficiency caused Plaintiff's alleged injuries. Thus, the Complaint fails to state a claim based on a failure to train, supervise, or discipline theory.

**C. Plaintiff lacks sufficient allegations of an unconstitutional custom or pattern by the City.**

First, Plaintiff asserts that Defendants Lucero and Meadows operated pursuant to a custom of unlawful arrest, malicious prosecution, and due process violations in the City. Complaint 52, ¶¶ 161-87. In support of this, Mr. Long cites a single incident where a white male was not prosecuted Complaint 1, ¶ 87; and certain statistics Complaint, ¶¶ 102-108. Yet three problems exist with Mr. Long's custom theory: (1) it relies on dissimilar incidents, and (2) there are too few prior examples, and (3) the presented statistics do not identify any individuals who were not black and who were not charged with homicide.

To establish that a custom was the moving force behind a constitutional violation, a plaintiff must identify for the district court other past examples that are: (1) substantially similar to the case at bar, and (2) sufficient in number to demonstrate a widespread practice of tolerating or condoning misconduct. *Carney v. City and County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). For example, Chief Judge Brimmer rejected a substantial majority of prior arrests in *Sexton v. City of Colorado Springs*, as the prior arrests did not resemble the plaintiff's arrest – namely an arrest allegedly motivated by criticism of the police department. 530 F. Supp. 3d 1044, 1070 (D. Colo. 2021) ("Both incidents involve an arrest allegedly due to the individual criticizing the police.

The other three alleged retaliatory arrests are too different to be considered…”). And while there is no specific required number of prior incidents, the Tenth Circuit has been clear that one similar incident is insufficient to meet a plaintiff's heavy burden under *Monell*. *See Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1287 (10th Cir. 2019) (“Mr. Waller's allegations—describing only one similar incident of excessive force prior to his own injuries—fall far short of plausibly alleging a “widespread practice” of excessive force, much less a practice ‘so permanent and well settled as to constitute a custom or usage with the force of law.’”). As summarized by Chief Judge Brimmer, the bare minimum appears to be three prior, similar incidents, but usually only where all of the incidents occurred in a short period of time and share distinctive facts to the present case. *Hernandez v. City and County of Denver*, No 21-cv-01538-PAB-MEH, 2022 WL 3597452, at *6 (D. Colo. Aug. 23, 2022) (unpublished).

Beginning with similarity, Mr. Long makes no effort to show that the Reed case he cites bears any resemblance to his own incident. According to the Complaint, Mr. Long's incident occurred when Mr. Long, confronted by an unarmed assailant, shot and killed that individual, and then shot and killed second unarmed individual he alleges assaulted him after the first killing. Complaint , ¶¶ 37, 42, 45, 51.

In contrast, the Reed case involved a suspect who shot only after the victim first fired at the suspect. ECF 1-1. Because the Reed case is fundamentally distinguishable from the facts of this case, it cannot show a custom as a matter of law. *Sexton*, 530 F. Supp. 3d at 1070. Mr. Long fails to demonstrate any similar incident involving an alleged constitutional violation.

Second, even if Mr. Long's single example was similar, it is simply too few in number to establish a custom under *Monell*. Again, *Sexton* is instructive. Judge Brimmer found that two prior

incidents of retaliatory arrest, in 2013 and 2019 respectively, were "insufficient to show a practice so permanent and well settled that it constituted a custom or usage" for the plaintiff's later arrest in 2019. *Sexton*, 530 F. Supp. 3d at 1071. A single incident, even if similar, is insufficient to demonstrate a practice "so permanent" that they influenced the officers' actions in this case. *Id.*

The single case highlighted is insufficient to show that the City was deliberately indifferent to a risk that officers would unlawfully arrest and prosecute Mr. Long. Since Mr. Long found only one incident worth mentioning in the history of the City he cannot allege that the City was on notice and deliberately indifferent to a custom of selective prosecution by its officers. *See Waller*, 932 F.3d at 1287 ("we have found no cases suggesting that a single prior incident can constitute a 'pattern' of conduct giving rise to an inference of deliberate indifference."). Mr. Long fails to identify sufficient cases to establish a custom of constitutional violations.

Finally, as discussed *supra*, statistics might be used to demonstrate a custom of constitutional violations. But without satisfactory statistics to demonstrate any claim of selective prosecution, the Complaint lacks sufficient allegations to use the same statistics to allege a custom on behalf of the city. As with the Reed case, these statistics are not similar to the case at bar or sufficient in number to allege a custom or pattern of unlawful actions by the City.

The Plaintiff fails to meet any of the elements of *Monell* liability with respect to the City.

## CONCLUSION

Because there was probable cause to arrest him, Plaintiff's unlawful arrest and malicious prosecution claims are without merit. Plaintiff's selective prosecution claims fails because he cannot allege facts which plausibly support that similarly situated individuals who were not Black were not prosecuted for the same crime for which he was arrested. Plaintiff's claims against the

City fail because there is no underlying constitutional violation by any City employee, and because even if there were, Plaintiff pleads no facts which plausibly support a claim that the City somehow caused such a violation. Plaintiff's claims should be dismissed pursuant to F.R.C.P. 12(b)(6).

DATED this 25th day of August, 2025.

*s/Bernard Woessner*
Bernard Woessner
Timothy M. Walsh
NATHAN DUMM & MAYER P. C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
Telephone: (303) 691-3737
Facsimile: (303) 757-5106

**CERTIFICATE OF SERVICE**

I hereby certify that on 25th day of August, 2025 I electronically filed the foregoing Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) using the CM/COMPLAINT system which will send notification of such filing to the following:

Zachary Dwight Warren
Highlands Law Firm LLC
501 South Cherry Street
11th Floor
Denver, CO 80246
Phone: (720)722-3880
zwarren@highlandslawfirm.com

DJ Goldfarb
Josh Marks
Berg Hill Greenleaf Ruscitti
1712 Pearl Street
Boulder, CO 80302
Phone: (303)402-1600
djg@bhgrlaw.com
jam@bhgrlaw.com
Attorneys for Defendant Meadows

.

*s/Bernard Woessner* ______________________
Bernard Woessner
Attorneys for Defendants
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
Telephone: (303) 691-3737
Facsimile: (303) 757-5106
BWoessner@ndm-law.com